Arthur Wachtel, J.
This is a motion by defendant Manhattan and Bronx Surface Transit Operating Authority for a protective order vacating the plaintiff’s notice for discovery and *766 inspection. This is an action for personal injuries by reason of alleged negligence in the operation of a bus owned by defendant. Defendant seeks to preclude the discovery of the report of the alleged accident made by its bus operator. Said report was made on a printed blank form entitled “ Accident Report ” filled out by the bus operator, addressed and mailed in a printed envelope directly to “ Mr. Sidney Brandes, General Counsel, Manhattan & Bronx Surface Transit Operating Authority,” and marked in print “ Confidential.” Copies of the blank printed form of report and envelope are annexed to the moving papers.
The form provides for the details of the accident, the names and addresses of persons claiming injury and of witnesses. The affidavits in support and in reply are the affidavits of an attorney associated with Sidney Brandes, the defendant’s attorney of record. He states in his supporting affidavit: “ The defendant Authority has approximately thirty-one hundred (3100) claims for personal injuries and property damage filed against it every calendar year, which, if not settled, go into litigation. It is for this reason that these accident reports are prepared solely and specifically for the Authority’s attorney at his request and for his own professional, exclusive use as such attorney, in anticipation of and in preparation for prospective litigation to advise the officers of the defendant Authority as to possible liability and advisability of settlement. This report is permanently retained by ¡*id attorney solely in his own file for the purpose of preparing for a litigation risk, and is not used by the Authority itself for the purpose of preventing further accidents, disciplining careless employees, or generally to increase the economy and efficiency of the operator or for any other such similar purpose. Matters relating to discipline of careless employees or to increase the economy and efficiency of the Authority are based upon oral hearings conducted by the supervisors of bus operators involved in accidents, when such proceedings are deemed warranted.”
Defendant further contends that this report is “ a privileged, confidential communication between attorney and client ’ ’ and is protected by CPLR 3101 (subd. [b]).
CPLR 3101 sets forth the scope of disclosure. While it starts generally with the declaration that “ There shall be full disclosure of all evidence material and necessary in the prosecution or defense of an action, regardless of the burden of proof, by: (1) a party, or the officer, director, member, agent or employee of a party” (3101, subd. [a], par. [1]), exception is made in certain cases where disclosure shall not be obtainable. These *767 are cases of ‘ ‘ privileged matter” upon objection of a party (3101, snbd. [b]), “ The work product of an attorney ” (3101, subd. [c]), and “ any writing or anything created by or for a party or his agent in preparation for litigation” “unless the court finds that the material can no longer be duplicated because of a change in conditions and that withholding it will result in injustice or undue hardship” (3101, subd. [d], par. [2]).
In Weinstein-Korn-Miller (N. Y. Civ. Prac., vol. 3, par. 3101.45) the authors state: “ It was the view of the Advisory Committee that the word ‘ attorney ’ should have the same meaning in the two areas of attorney-client privilege and attorney work product. The protection afforded by both CPLR. 3101 (b) and CPLR 3101 (c) thus would depend upon the capacity in which the attorney acted at the time he did the work for which immunity is sought. A lawyer acting as a special investigator cannot claim work product immunity any more than he may qualify for the attorney-client privilege ° * * The attorney-client privilege is narrower, in that it does not extend to information which an attorney obtains from a witness, nor to memoranda and other writings prepared by an attorney for use in preparing his case so long as they do not give a clue to the client’s communication * * * The protection afforded by CPLR 3101 (c) does not extend to material prepared by an attorney unless it involves his work as a lawyer. Since Ms training as a lawyer may affect his reaction to almost any work he does, drawing a line excluding work product often is exceedingly difficult. It is clear that the work of bar members as claim agents, special investigators * * * and the like will not be protected under CPLR 3101 (c), although immunity may be granted to such work under paragraph 2 of CPLR 3101 (d) if it was prepared for litigation. Particularly troublesome are the operations of the house counsel, whose business advice may be intertwined with his work as a legal adviser. A practical approach would be to resolve questionable cases in favor of independent counsel and against salaried lawyers.” They further point out in paragraph 3101.44: “ To conform to the underlying policy of the disclosures procedures, which is to permit maximum disclosure, CPLR 31.01 (c) should be construed as narrowly as possible to include only those materials prepared by the attorney, acting as an attorney, and containing his analysis and trial strategy. All other material prepared for litigation should be encompassed by paragraph 2 of CPLR 3101 (d) ”.
These distinctions have been the subject of numerous cases iu the Federal courts since the rule was laid down in Hickman *768 v. Taylor (329 U. S. 495 [1947]) from which the original draft of CPLR 3101, subds. [c], [d]) was derived. (See Taine, Discovery of Trial Preparations in the Federal Courts, 50 Col. L. Rev. 1026, 1042; 74 Harv. L. Rev. 1027, 1031; Bifferato v. States Marine Corp. of Delaware, 11 F. R. D. 44, 46-47 [U. S. Dist. Ct., S. D. N. Y., 1951]; Cogdill v. Tennessee Val. Auth., 7 F. R. D. 411, 414; Newell v. Capital Tr. Co., 7 F. R. D. 732.) Suffice it to say that the report in the case at bar was filled out by the bus operator in a printed blank form and forwarded to the defendant’s general counsel. On the basis of the analysis referred to, it cannot be construed as an attorney-client communication within the meaning of CPLR 3101 (subd. [b]) nor as the work product of an attorney within the meaning of 3101 (subd. [c]). This brings us to the question whether paragraph (2) of subdivision (d) of CPLR 3101 is applicable.
Defendant places great reliance on the rule of Kandel v. Tocher (22 A D 2d 513) and cases following it, that an accident report made by a defendant to his insurance carrier is immune from discovery. However, this rule was specifically limited to automobile liability insurance cases. Mr. Justice Breitel, speaking for the court, said: “ The kind of investigation, reports, and statements involved in the performance of an insurer’s responsibility under automobile liability insurance is not to be confused with the investigation, reports, and statements resulting from the regular internal operation of an enterprise. Such material serves many purposes in the conduct of the enterprise, including perhaps eventual use in any litigation which may ensue. Thus, the material resulting from an investigation made by a public utility in connection with an accident occurring in its operation may be a part of the regular business of conducting the utility. The purpose is not limited to, or even predominantly that of, preparing for a litigation risk. On the contrary, the purpose may be to prevent future accidents, discipline careless employees, or, generally, to increase the economy and efficiency of the operation. In that situation the preclusive provisions of the disclosure statutes do not apply. ’ ’ (Kandel v. Tocher, supra, pp. 515-516. Emphasis supplied.)
Furthermore, Mr. Justice Breitel, speaking (p. 516) for the Appellate Division, First Department reaffirmed its holding in Bloom v. New York City Tr. Auth. (20 A D 2d 687) stating:
‘ ‘ This court held, since the CPLR was enacted, that a public carrier would be required to produce the reports and statements made by employees of the defendant with respect to an accident concerning which the carrier was being sued (Bloom v. New York City Tr. Auth 20 A D 2d 687). Rios v. Donovan (21 A D 2d *769 409), in which. Mr. Justice Valente on behalf of this court elaborated upon the distinctions in procedure between pretrial examination and pretrial production of documents, does not suggest the contrary. Indeed, in discussing the Bloom case (supra) the court emphasized not only that the reports had been obtained prior to the institution of suit but that they had not been made in preparation for trial.” Mr. Justice Valente specifically pointed out: “ In Bloom v. New York City Tr. Auth. (20 A D 2d 687) this court permitted discovery and inspection of accident reports obtained prior to the institution of suit, and not made in preparation for trial, and of the reports of the accident prepared by the engineer and conductor of defendant shortly after the accident. (See, also, McGarry v. New York City Tr. Auth., 20 A D 2d 683.) ” (Rios v. Donovan, 21 A D 2d 409, 412.)
Mr. Justice Breitel further pointed out: ‘1 The commentators on the CPLR are in accord with this analysis. Thus in Weinstein-Korn-Miller (N. Y. Civ. Prac., vol. 3, par. 3101.54) distinction is made between materials created as part of a normal business routine and assembled for transmittal to an attorney and other material prepared in contemplation of litigation, whether by nonlawyers or lawyers acting in a nonlegal capacity. These are distinguished again from materials prepared by attorneys for a party in litigation. The statute is interpreted to preclude materials prepared in contemplation of litigation even if by nonlawyers or lawyers acting in a nonlegal capacity.” (Kandel v. Tocher, supra, pp. 516-517.)
There is no denial that the bus driver’s report was made in the regular course of his employment. Defendant admits that ‘ ‘ matters relating to discipline of careless employees or to increase the economy and efficiency of the Authority are based upon oral hearings conducted by the supervisors of bus operators involved in accident, when such proceedings are deemed warranted ”. Clearly, the reports of bus operators are or may be required for such hearings. Furthermore the report was made on a printed form Avhich the operator filled out as to the details of the accident, and included space for the names and addresses of the parties claiming injury, and of witnesses of the scene of the accident. In seeking to distinguish the New York City Transit Authority cases, defendant’s counsel states that defendant has its own procedures “ which procedures have been followed by the attorney for the defendant Authority and by the attorneys for the prior operators, Fifth Avenue Coach Lines, Inc., and Surface Transit, Inc., for the past thirty years ”. Finally, the import of the distinction made in Kandel v. Tocher *770 (supra) is clear. We are not concerned in this case with “ litigation insurance ”. We are concerned with a public utility. Its business is not merely to defend against claims. The reports of its operators of accidents in the course of the maintenance and operation of its buses are, and should be, required in the regular course of its business as a public carrier, to insure more safe and efficient operation and management.
In the last analysis, “Whether an internal business report of an accident * * * is designed for use in litigation or for use by management in disciplining employees, avoiding future accidents, or making required governmental reports may be a close question best left to the courts ” (First Preliminary Report of the Advisory Committee on Practice and Procedure, N. Y. Legis. Doc., 1957, No. 6[b], p. 120).
The fact that the report is nominally forwarded to the general counsel of defendant is not conclusive. The question is whether in fact it was made as an internal business report in the regular course of business of the public carrier (with possible use in eventual litigation, that may ensue) or if in fact it was made in preparation for litigation.
No sufficient proof has been adduced by defendant that the report in this case was in fact prepared for litigation. It appears to be nothing more than a report prepared by the defendant’s employee in the regular course of his employment in the regular course of defendant’s business. The mere fact that it is forwarded to defendant’s counsel, “ to the legal representative of a potential defendant,” and not to the Authority is not sufficient reason for distinguishing this case from the holding of the Appellate Division, First Department, in Bloom v. New York City Tr. Auth. (supra). (See, also, McGarry v. New York City Tr. Auth., N. Y. L. J., Oct. 8, 1963, p. 14, col. 6, affd. 20 A D 2d 683.) “ Materials created as part of normal business routine and assembled for transmittal to an attorney are not — by such gathering and forwarding — changed in character to a thing ‘ created # * * in preparation for litigation ’ ” (3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3101.54).
In the absence of factual proof to warrant a different conclusion, the following statement of the commentators on the CPLR applies to the case at bar: “ Whether an accident report is prepared ‘ in the regular course of business ’ presents difficult questions of fact and judgment. In any large establishment — particularly a public utility — where accidents are expected and standard forms for reporting have been provided, the primary purpose of the records is to permit effective managerial knowledge and control. Even though the reports are also designed to *771 provide information in case of possible litigation, their use for this purpose at the time of preparation is too hypothetical to warrant classification as preparation for litigation.” (3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3101.50.)
Accordingly, the motion is denied.