Louis I. Kaplan, J.
It appears that this application for a protective order vacating plaintiff’s notice for discovery was not made within the time limited by CPLR 3122 and 2103 (subd. [b], par. 2) and that no special circumstances excusing the delay have been shown. Accordingly, under the doctrine enunciated by the Appellate Division, First Department, in the case of Coffey v. Orbachs, Inc. (22 A D 2d 317) movants have waived all objections they might otherwise have had to the production of the document in question, except objections based upon the provisions of CPLR 3101 (subds. [b] and [c]) which respectively make privileged matter and the work product of an attorney unobtainable by discovery. The court herein is further precluded from any inquiry into the question of whether or not such document is ‘ material prepared for litigation ”, within the meaning of CPLR 3101 (subd. [d])
I am of the opinion that this court should follow the same presumption as did the court in the Coffey case (supra), viz., that the notice to discover was intended to be impliedly limited by the provisions of CPLR 3101 (subds. [b] and [c]). However, such provisions do not aid the defendants’ position herein.
The movants herein have failed to demonstrate to the court *18 that the report of the accident involving the self-insured corporate defendant’s cab, made shortly following the accident, at its direction, by its employee, the codefendant driver, to the Treves Service Corp. (hereinafter referred to as Treves ”), was either a privileged or a confidential communication between attorney and client or the work product of an attorney.
It is apparent from the motion papers that the document in question cannot qualify for immunity on the last-mentioned theory. The report was concededly prepared by an individual who was acting at the time not as an attorney but merely as an investigator for Treves. Accordingly, it cannot be protected under CPLB 3101 (subd. [c]) (see 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 3101.44, 3101.45, 3101.47).
There has been no clear delineation upon these papers of the material facts bearing upon the nature of the relationship between the defendant cab company, Treves and defendants’ attorney. Who actually retained Treves for the purpose of taking accident statements; for what purposes are such statements utilized by the defendant cab company; who pays Treves for such services; whether or not it is understood that such statements will be turned over to defendant’s attorneys; whether or not they are taken under the direction or upon the instructions of defendant’s attorneys; whether or not Treves gives any independent advice or guidance with respect thereto; whether such statements are ever disclosed to third persons; whether such statements are taken in every case involving an accident to one of the defendant’s cabs; whether Treves performs any services which may subserve the internal purposes of the cab company, independently of the services performed for its attorneys; and whether the attorney-client relationship here with respect to possible future litigation which might arise from an accident was intended to arise from the time Treves commences its investigation and takes the initial statement from the client, or only when the latter directs it to turn over the investigative material to the attorneys — are all material matters which must be answered before this court can make an intelligent determination as to whether the documents containing the statements are privileged under CPLB 3101 (subd. [b]) (see discussion in 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 4503.03, 4503.04, 4503.09, 4503.10, 4503.12).
The difficulty and complexity of the problem of determining whether the statement in question qualifies for immunity from discovery under CPLB 3101 (subd. [b]) is highlighted not only by the paragraphs cited above from the commentators’ treatise on the CPLB, but also by the following language of *19 Mr. Justice Breitel in Ms decision in the case of Kandel v. Tocher (22 A D 2d 513, 517-518):
“It is not necessary now to determine whether reports, investigation, and statements received or created by an automobile liability insurer would also involve the other preclusive provisions of CPLR 3101. But if they do, then an absolute preclusion would ensue. Thus, it may appear that the matter sought is privileged under subdivision (b) based upon the attorney-client relationship. In that connection it would make no difference if the client has not himself retained the attorney (5 Weinstein-Korn-Miller, op. cit., supra, par. 4503.04). By extension, in a proper case, a court might conclude that the privilege arises in advance of the assignment or actual employment of an attorney by the insurer to represent its insured * * *.
“ Lastly, it should be emphasized that the distinctions involved in these problems of disclosure are not merely technical and do not flow from accidental differences in statutory language. An important policy consideration is involved. It is of the greatest importance that an insured be encouraged to make complete and candid disclosure to his liability insurer. The purpose is just as significant as in the case of the attorney-client relationship in the absence of insurance. Indeed, as already noted, automobile liability insurance, just because it is litigation insurance, is an institutionalised substitute for the individualised attorney-client relationship in litigation or contemplated litigation. In appropriate and parallel contexts it is entitled to similar protection ”.
Furthermore, it should be noted that the above-quoted statement of the court, by referring to paragraph 4503.04 of the Weinstein-Korn-Miller treatise, thereby indirectly acknowledged, with seeming approval, the case of Hollion v. Kaye (194 Misc. 821) contained in said paragraph, which held that, at least regarding communications made by an insured to his insurer and later passed on to an attorney, there is a privilege (see, also, Schulgasser v. Young, 25 Misc 2d 788, app. dsmd. 12 A D 2d 994; Weinstein-Korn-Miller, supra, par. 4503.12).
Accordingly, in light of the above-quoted language of the Appellate Division, it is difficult to see why the reasons advanced therein for finding that the insurer-insured relationship is an institutionalized substitute for the attorney-client relationship, and is entitled to similar protection, cannot be applied with at least equal force to a parallel situation where an independent firm of private investigators and/or adjusters acts only at the direction of and as an intermediary between a self-insurer and *20 attorneys retained by it for litigation or contemplated litigation; provided, of course, that such firm performs no other functions for its client than those which would normally be performed by an insurer; i.e., the investigation, defense and settlement of claims. If, however, such a firm’s function also included the taking of accident reports for some internal business purposes of its client as well as for possible litigation purposes, I am of the opinion that such reports would be excepted from the protection of CPLR 3101 (subd. [b]) as the privilege created thereby attaches only to those communications made by a client to his counsel solely for the purposes of professional advice and assistance (see 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4503.04; O’Neill v. Manhattan & Bronx Surface Tr. Operating Auth., 47 Misc 2d 765; cf. Bloom v. New York City Tr. Auth., 20 A D 2d 687; Kandel v. Tocher, supra).
However, insufficient facts have been adduced hereon to enable me to properly determine the precise status and function •of Treves vis-a-vis the corporate defendant and its attorney. Such determination is obviously a prerequisite to the proper determination as to the applicability of CPLR 3101 (subd. [b]). The burden of establishing that the statement sought to be discovered herein is a “ privileged communication between attorney and client “ is upon the parties resisting its disclosure upon that ground, and they have failed to meet such burden. Therefore, the defendants must comply with plaintiff’s notice for discovery.
The motion is accordingly denied and defendants are directed to comply with plaintiff’s notice for discovery on August 24, 1966, at the time and place therein fixed, unless otherwise stipulated between counsel.